ILLINOIS CENTRAL RAILROAD COMPANY

v.

REUBEN S. HOSLER, ADMINISTRATOR.

*Master and Servant—Railroad Company—Negligence—Action for Damages for Death of Employe—Railway Collision—Question of Fact— Pleading—What Omissions Cured by Verdict—Fellow-servant.*

In an action against a railway company to recover damages for the death of plaintiff's intestate in a collision, the same having been caused either by the negligence of an engineer in failing to notice a red light, or else by the act of some person in changing the red light to white, this court

holds that the overwhelming weight of evidence was that the accident was due to the negligence of the engineer, and as plaintiff's intestate was a fellow-servant with the engineer, there can be no recovery.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Kankakee County; the Hon. C. R. STARR, Judge, presiding.

Messrs. HARRISON LORING and W. POTTER, for appellant.

Messrs. H. L. RICHARDSON and H. K. WHEELER, for appellee.

MR. JUSTICE CARTWRIGHT. Appellee brought this suit as administrator of the estate of William Hosler, deceased, to recover damages for the death of said William Hosler. There was a trial and a verdict for appellee for $4,000, on which judgment was entered. The only material fact in dispute at the trial, touching the liability of appellant, related to the color of a signal light.

Aside from that question the facts proven were as follows:

William Hosler was a fireman in the employ of appellant. On November 22, 1890, he was firing the engine on the south bound fast mail train which was due at Kankakee at 4:55 A. M. Edward Barker was the engineer in charge of the engine. A north bound passenger train was due at Kankakee at the same time as the train in question. South of the station at that place there was a bridge upon which there were two tracks, connected with a switch at the north end of the bridge. In going over the bridge the south bound trains took the east track and north bound trains took the west track. On the top of the switch spindle there was a signal lantern which had four lenses, one on each side, two red and two white, and the lantern turned with the spindle as the switch was operated. A white light turned to the north indicated that the switch was set for the east track, and was the signal to a south bound train to

go ahead, while a red light turned to the north was a signal that the switch was set for the west track and that the train going south must not go over the switch. The top of the spindle fitted into a socket in the bottom of the lantern, and was of such shape that the lantern could only be placed upon it in two positions, one the proper position and the other directly opposite. The switchman's shanty was west of the switch-post a short distance.

When the lantern was in correct position on the spindle, there would always be a white light on the west side toward the shanty and a red light on the east side. When a red light was turned to the north there would be a white light to the south and *vice versa*. If the switch was set for the east track the white lights would be north and west and the red lights south and east. If it was set for the west track the red lights would be north and east and the white lights south and west. It was the duty of the switchman to operate the switch by turning it so as to connect with the east track for trains going south and with the west track for trains going north. South of the bridge there was a semaphore with red and white lights, connected by a wire with the machinery handled by the switchman and used as a stop signal for all trains. No train was allowed to go past it if it showed a red light.

On the morning in question, at about four o'clock, a north bound freight train came along on the west track and partly past the switch, which was set for the train going north by the switchman. When the freight train was partly past the switch it was cut in two, and part was left standing on the west track on the bridge. The switchman went back into his shanty and fell asleep. While he was sleeping the freight train was connected and passed on, leaving the switch connected with the west track and set for the north bound trains. The switchman remained asleep, and the passenger train from the south arrived and stopped on the west track south of the bridge for the fast mail to arrive and pass on the east track. The fast mail arrived a few minutes late and stopped at the station in sight of the signal lights at

the switch. After making the stop the engineer started his train and ran past the switch and over the bridge at a rapid rate, taking the west track with which the switch was connected, and the engine came in collision with the engine of the north bound passenger train standing on the west track. The fireman, Hosler, was killed, and the engineer, Barker, was thrown from the cab and lost a leg and was otherwise injured. There were charges in the declaration connected with the manner of construction of the engine and tender, but no reliance was placed on them on the trial, and there was no evidence on which to base any liability on account of them. The liability which it was sought to establish was based on averments of the declaration, that it was the duty of the switchman to set the signal light and the switch properly for the train on which the deceased was employed to pass, but that while there was a white signal light signifying that the train should go ahead, the switch was wrongfully set for the west track, and through the carelessness and negligence of the switchman in that regard the deceased was killed. The matter of fact in dispute relating to the color of the signal light was, whether the signal light on the switch turned toward the north at the time the fast mail passed the switch, was white or red. This was the vital question in the case, inasmuch as the engineer was a fellow-servant of the deceased, and if the red light was turned north it was notice to him not to pass the switch, and the accident was occasioned by his not heeding the signal. In that event there could be no recovery. As already explained, if the lantern was properly set on the spindle, a white light could not have been turned north in the position in which the switch was set. It is clear that the lantern was properly set during the night and up to the time that the north bound freight left.

A great many trains had passed during the night and there had been no trouble or confusion, as there would inevitably have been if the lights had been reversed. The engineer, Barker, testified that when he started from the station he saw the white light, signifying that the track was clear.

This could only be true in case some person, after the north bound freight had left, had lifted the lantern from the spindle and turned it around and put it on the spindle in a reversed position; and it is the theory of appellee that some unknown person did so misplace the lantern while the switchman slept. The switchman testified that he was aroused from his sleep by the fast mail, and tried to cross the track to set the switch, but did not have time to get across; and that he gave a stop signal and then a back up signal with his lantern, but that they were unheeded. He testified that the red light was north, and that he did not change the position of the lamp on the spindle, nor did anybody else to his knowledge. Other witnesses saw the switch lights within a few minutes after the accident and the red light was then turned north. People who were about when the accident occurred and whose attention was drawn to the light immediately after, testified that such was the case. . The claim that there was a white signal light toward the north rests upon the evidence of the engineer, and he was a deeply interested witness. He had a suit pending against appellant on account of his injuries, wherein he must establish the fact that he was not in fault in passing the switch while a red light was displayed. Moreover his testimony on this trial differed from that given by him before the coroner at the time of the inquest, when he said in substance that he saw no red light; that he did not notice any signal light, and that he saw the white light of the semaphore which was burning all right and was white. He testified on this trial that he had no recollection of his examination by the coroner, which was about a week after the amputation of his leg. A doctor testified as to the probability of his being rational at such a time and able to remember his testimony. The evidence of the doctor was that he might have been delirious or not, and that there was no fixed rule for determining the fact other than apparent rationality or delirium at the time. Those who were present at his examination discovered no traces of inability to state the facts when he was inquired of, and his answers seem to have been responsive to the questions.

Then, in order to make it possible that he is correct in his later testimony, it would be necessary to adopt the theory of appellee that some person changed the lantern on the spindle after the freight train went north, and that the switchman set it right again after the fast mail passed before the other witnesses saw it.   It is possible that the lantern may have been so misplaced, but a mere surmise that such a thing might have happened, will not do.   The supposition is naked theory, without anything in the evidence in the case tending to establish it, and is mere food for speculation. It is mere conjecture, built upon a possibility of an improbable kind.   The clear preponderance of the evidence was that the red signal light was turned north, indicating to the engineer that the way was not clear, and that he should not pass the switch and start over the bridge.   It is contended by appellant that an engineer should not pass the switch without a hand signal from the switchman, but it seems not to have been a uniform practice to not pass the switch without it, and if the switch light had been right, the omission of the hand signal would not have been sufficient, in our opinion, to establish negligence in the engineer.   Appellant also makes a point on account of certain alleged defects in the declaration.   If the declaration was defective in any of the particulars claimed, they were such defects as were cured by the verdict.   I. C. R. R. Co. v. Simmons, 38 Ill. 242; Barker v. Koozier, 80 Ill. 205; L. S. & M. S. Ry. Co. v. O'Connor, 115 Ill. 254; Keegan v. Kinnare, 123 Ill. 280.

In I. C. R. R. Co. v. Simmons there was an omission of the averment that plaintiff was in the exercise of proper care, and it was held that if the declaration was defective in that particular it was cured by verdict, and that when anything is omitted in the declaration, though it be a matter of substance, if it be such that, without proving it at the trial, the plaintiff could not have had a verdict, and if there be a verdict for the plaintiff, the defect is cured.   In Barker v. Koozier there was an omission to aver any fact making it the duty of Barker to turn to the right of the center of the road, and no conditions were set out under which it became

wrongful, unlawful or negligent for him to drive in the center of the traveled track. The count was adjudged sufficient after verdict. It is urged that the case of Joliet Steel Co. v. Shields, 134 Ill. 209, established the rule that any omission in the declaration which would be fatal on demurrer is just as fatal after verdict, because a denial of the allegations of the declaration does not impose on the plaintiff the duty of proving the omitted fact, and that although there be a recovery, it is not to be presumed or intended that such omitted fact was proven, although essential to such recovery. We do not think that it was intended by that case to make a general rule that a fact, not inconsistent or at variance with any material allegation of the declaration, and which must of necessity have been given in evidence to authorize a verdict, is not to be presumed to have been proven, and that the failure to mention it in the declaration is fatal after verdict. We do not think that the rule is the same where there has been a trial as in case of default where there can be no intendment beyond the facts actually alleged and admitted by the default. The verdict being in our judgment clearly against the weight of the evidence in the particulars above stated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*